## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Cordell Sanders (#R-41346),      )
                                     )
                    Plaintiff,    )
                                     )      Case No. 10 C 5714
      v.                    )
                                     )      Judge Joan B. Gottschall
                                   )
Lieutenant Fredricks, et al.,    )
                                   )
                    Defendants.   )

## MEMORANDUM OPNION AND ORDER

Plaintiff Cordell Sanders, an Illinois prisoner, brought this action *pro se* under 42 U.S.C. § 1983, arising from an encounter with correctional officers at Stateville Correctional Center on October 24, 2008. Before the court are the parties' cross-motions for summary judgment. For the reasons discussed below, Plaintiff's motion for summary judgment is denied and Defendants' motion for summary judgment is granted in part and denied in part.

### Northern District of Illinois Local Rule 56.1

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. Local Rule 56.1(a) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue" for trial. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Rule 56.1(b)(3)(C). The party opposing summary judgment shall submit "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment." *Id.*

To defeat summary judgment, the opposing party "must file a response to each numbered paragraph in the moving party's statement" of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005) (internal quotation marks omitted). In the case of any disagreement, the opposing party must reference "affidavits, parts of the record, and other supporting materials." *Id.* "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). A plaintiff's *pro se* status does not excuse him from complying with Local Rule 56.1. *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

Sanders complied in large part with the form of briefing required by Local Rule 56.1. That is, he filed statements of fact in support of his motion for summary judgment and cited to the record in support of his statements. *See* R.160, Pl. Mot. for Summ. J., Undisputed Material Facts at pp. 3-5 ("Pl. Facts 1"); R.161, Pl. Exs. A-K at pp. 6-20; R.179, Pl. L.R. 56.1 Filing ("Pl. Facts 2"). Sanders also responded to Defendants' statements of fact. *See* R.175, Pl. Reply to Defs. L.R. 56.1 Filing. But the court cannot consider many of the facts submitted by Sanders because some were not properly presented to the court, *see* R.176, Pl. Reply to Defs. Mot. for Summ. J. at pp. 13-15; some consist solely of legal conclusions, *see, e.g.,* Pl. Facts 1 ¶ 15; and some are inconsistent with the findings of the prison's disciplinary committee, *see, e.g.*, Pl. Facts 1 ¶ 11. Still more are not supported by admissible evidence or the evidence cited does not support the assertion of fact. For example, Sanders' undisputed material fact 7 states:

> It is undisputed that exposure of pepper spray and the excessive amounts of pepper spray Fredericks sprayed on Mr. Sanders, Mr. Sanders had an asthma attack and was given breathing, asthma treatment and kept him overnight in the prisons infirmary (see. Ex. D, F#1, F#2)

Pl. Facts 1 at p. 3. The documents cited by Sanders, however, show only that he had a history of asthma, "lungs.occ.wheezing," "resp 16," "heart wnl," and that he was admitted to the Health Care Unit for evaluation. Similarly, paragraph 15 of Sanders' second statement of facts states:

> Defendants . . . took the Plaintiff out of his assigned cell, after defendant Rogers deliberately applied the hand cuffs deliberately extremely tight on the Plaintiffs wrist, cuasing extreme pain SEE Defendants Document #170-1; page 7 of 10 page ID#632 page 21 of the transcript filed 7.1.15 . . . .

Pl. Facts 2 at p. 3, but the evidence cited by Sanders mentions nothing about the officers' application of handcuffs.

These examples are not a comprehensive discussion of the facts excluded by the court but are illustrative of the types of problems suffered by many of Sanders' submissions. Indeed, the fact statements submitted by Sanders often include admissible content as well as inadmissible content within the same sentence or paragraph; he relies heavily on what appear to be business records maintained by the prison, which are admissible to some extent but also contain inadmissible hearsay. The court therefore has carefully examined each statement submitted by Sanders for relevancy, evidentiary support, and admissibility in construing the facts of this case and gives deference to Sanders' version of the facts where they are properly presented and supported by admissible evidence.

Defendants, for their part, complied with Local Rule 56.1, *see* R.167, Defs. Resp. to Pl. Facts 1; R.170, Defs. L.R. 56.1 Filing ("Defs. 56.1 Stmt."); R.187, Defs. Resp. to Pl. Facts 2, and each relevant substantive assertion of Defendants' statements is supported by record evidence. Defendants also filed and served on Sanders a Local Rule 56.2 Notice, which explained in detail the requirements of Local Rule 56.1.

With the above factors in mind, the court turns to the facts of this case.

**Sanders' October 24, 2008 Encounter with Officers Rogers, Fredericks, and Hopkins**

On October 24, 2008, Sanders was housed in F House at Stateville Correctional Center. Defs. 56.1 Stmt. ¶ 14. Sanders was out of his cell on the morning of October 24, 2008, but returned to his cell at approximately 1:00 p.m. *See id.* ¶¶ 15, 16, 21; Pl. Facts 2 ¶¶ 8-9. Sanders' cell had a solid steel door with plexiglass over the window and a chuckhole (or hatch) in the door. Defs. 56.1 Stmt. ¶ 17. According to Sanders, the officer who escorted him to his cell reached through the chuckhole and grabbed Sanders' buttocks after securing Sanders in the cell. Pl. Facts 2 ¶ 11. Sanders cursed at the officer, *id.* at 12, and yanked his own hands back into the cell, Defs. 56.1 Stmt. ¶ 47.

Major Theodore Fredericks was the F House lieutenant on October 24, 2008, and was responsible for supervising staff and inmates in F House on the 7:00 a.m. to 3:00 p.m. shift. Defs. 56.1 Stmt. ¶ 20. Fredericks was making rounds at approximately 1:00 p.m. and saw Officer Jason Rogers securing Sanders in his cell.[1] *Id.* ¶ 21. As Rogers was attempting to remove Sanders' handcuffs through the chuckhole, Sanders grabbed Rogers' wrist and pulled Rogers' arm through the hole and into the cell. *Id.* ¶ 22; R.170-11, Adjustment Comm. Final Summ. Report dtd Oct. 30, 2008 at IDOC000008 ("Adjustment Comm. Report"). Fredericks immediately proceeded to Sanders' cell and administered two bursts of pepper spray through the chuckhole. Pl. Facts 1 ¶ 2; Pl. Facts 2 ¶ 13. Sanders then took the handcuffs, which were still attached to one of his wrists, stuck one end of the restraints in the cell door, and bent them, damaging the restraints. Defs. 56.1 Stmt. ¶ 25; Adjustment Comm. Report.

---

[1]Sanders did not name Jason Rogers as a defendant to this action. Instead, Sanders maintains that Defendant James B. Rogers was the officer involved in the events underlying this litigation. But, for the reasons set forth in section IV, *infra*, Sanders failed to establish that James B. Rogers was involved in the events of October 24, 2008.

Officer Michael Hopkins was assigned as a gallery officer in F house on October 24, 2008. Defs. 56.1 Stmt. ¶ 26. As he was making rounds, he observed a disturbance at Sanders' cell involving Sanders, Major Fredericks, and Officer Jason Rogers. *Id.* Hopkins responded to the disturbance, where he assisted Fredericks in securing Sanders using a second set of handcuffs. *Id.* ¶ 27. Plaintiff was taken from his cell to a holding area known as the bullpen. *Id.* ¶ 29.

According to Major Fredericks, when an inmate has been exposed to pepper spray, the standard procedure is to contact a medical technician to evaluate the inmate. *Id.* ¶ 30. Medical staff was contacted, and medical technician Sheehy saw Sanders in the F house bullpen at approximately 1:30 p.m. *Id.* ¶ 32. Sheehy then escorted Sanders to the healthcare unit for evaluation by a physician and Sanders was able to rinse his eyes and face. *Id.* ¶ 33. Notes from Sanders' evaluation reflect "lungs.occ.wheezing," "resp 16," "heart wnl" at 1:45 p.m. and that Sanders had a history of asthma, *see* R.161, Pl. Exs. at p. 12, but he reported no pain or discomfort as of 2:05 p.m., Defs. 56.1 Stmt. ¶ 34. Plaintiff was released from the healthcare unit the following day. *Id.* Sanders did not tell Major Fredericks, Officer Rogers, or Officer Hopkins that he suffers from asthma. *Id.* ¶ 31.

Sanders was issued a disciplinary ticket for his conduct on October 24, 2008, and was found guilty of assaulting a staff member and damaging property. *Id.* ¶¶ 51, 55; Adjustment Comm. Report. The prison's disciplinary committee made the following findings of fact in reaching its decision:

> [W]hile returning Sanders to assigned cell and removing restraints from Sanders; Sanders grabbed reporting Officer's wrist and yanked Officer's arm into cell, taking possession of restraints . . . Sanders refused to return restraints to Officer, and after being sprayed with O.C. stuck the end of the restraints in the door and bent and damaged the restraints.

Adjustment Comm. Report. Sanders received discipline of six months c-grade, six months segregation, six months of contact visit restrictions, and revocation of six months good conduct credit. *Id.* The good conduct credits have not been restored. Defs. 56.1 Stmt. ¶ 56.

<b>Sanders' Request for Cleaning Supplies</b>

When Sanders returned to his cell following the events of October 24, 2008, he asked an unidentified correctional officer for cleaning supplies on two or three occasions. *Id.* ¶ 58. Sanders testified at his deposition that he received cleaning supplies within about one week of the October 24, 2008 incident. *Id.* ¶ 68. He also testified at a hearing in this case that pepper spray from the October 24, 2008 incident remained in his cell for about one week after the incident. *Id.* ¶ 69.

Sanders subsequently submitted two grievances concerning his request for cleaning supplies. In a grievance dated November 13, 2008, Sanders complained that "mace" remained on the ceiling of his cell from the October 24, 2008 incident and requested to have the mace removed. *Id.* ¶ 63. Counselor Cynthia Harris received the grievance on November 15, 2008, and responded that same day, stating "inmates are given cleaning supplies upon request from security staff. Inmate may clean his cell." *Id.* In a grievance dated November 16, 2008, Sanders wrote:

> Nov 16, 2008, I made a request to Officer Lindsey for some cleaning supplies to clean the mace from the ceiling of the cell I'm in. Lindsey mumbled something and walked away from the cell door and I never got any cleaning supplies. The mace has been on the ceiling for three weeks and everyone have been deliberately indifferent to my health and asthma complications.

R.170-15, Nov. 16, 2008 grievance at IDOC000032; *see* Defs. 56.1 Stmt. ¶ 64. Harris responded to Sanders' grievance on November 22, 2008: "per security staff in unit F house, inmates are given cleaning supplies regularly upon request so that they are able to clean their cells. When supplies are available in the unit they are passed out." Defs. 56.1 Stmt. ¶ 65. Harris explained at her

deposition that she likely talked to staff before responding to Sanders' November 16 grievance: "I believe I did ask the staff if they had cleaning supplies and they probably didn't for me to have put an additional statement here because sometimes if they didn't have it that's probably why the officer didn't give it to him." R.170-14, Feb. 28, 2012 Dep. of Cynthia Harris at 71:12-16; *see* Defs. 56.1 Stmt. ¶ 67. Harris further explained that, when inmates need cleaning supplies, they must submit their request to correctional officers in the cell house. Defs. 56.1 Stmt. ¶ 66.

### Sanders' Federal Lawsuit

Sanders, who was represented by counsel at the time the operative complaint was filed, brought this civil action against "Major Fredericks, Parole Agent Rogers, Correctional Counseler Harris, Prison Guard M. Hopkins, and Correctional Officer John Doe," alleging that Defendants violated his rights under the Eighth Amendment. *See* R.128, 1st Am. Comp. Count I was brought against Defendants, in general, and alleged that Defendants used excessive force in "conscious disregard and deliberate indifference to Plaintiff's serious medical needs and safety." *Id.* ¶¶ 23-26. Count II alleged that Defendants Rogers and Hopkins failed to intervene in Defendant Fredericks' use of pepper spray and that Defendants, in general, did not "adhere to the IDOC regulations in dealing with prisoners who have been sprayed with pepper spray." *Id.* ¶¶ 27-32. Count III was brought against the John Doe defendant concerning the allegedly contaminated conditions of Plaintiff's cell and uniform when Sanders returned to his cell on October 25, 2008. *Id.* ¶¶ 33-38. Count IV was brought against Defendant Harris concerning her alleged denial of cleaning supplies. *Id.* ¶¶ 39-44.

Before the court are the parties' cross-motions for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After a properly supported motion for summary judgment is made, the opposing party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (internal quotation marks omitted). That is, to survive summary judgment, the nonmoving party must go beyond the pleadings and "identify with reasonable particularity the evidence upon which [he] relies." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Evidence submitted in opposition to summary judgment must be admissible at trial under the Federal Rules of Evidence, although attested testimony, such as that found in depositions or affidavits will also be considered. *See id*; *Scott v. Edinburg*, 346 F.3d 752, 759-60 & n.7 (7th Cir. 2003).

On cross-motions for summary judgment, each movant must satisfy the requirements of Federal Rule of Civil Procedure 56, *see Cont'l Cas. Co. v. Northwestern Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005), and the court views the record and all inferences in favor of the party against whom the motion under consideration is made, *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001). The court does not evaluate the weight of the evidence, judge credibility of witnesses, or determine the truth of the matter, but instead, determines whether there

is a genuine issue of triable fact. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Summary judgment is appropriate if, on the evidence provided, no reasonable juror could return a verdict in favor of the non-movant. *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772-73 (7th Cir. 2012) (citation omitted); *see Anderson*, 477 U.S. at 251-52.

## DISCUSSION

### I.      Excessive Force – Use of Pepper Spray

Both Sanders and Defendants move for summary judgment on Sanders' excessive force and failure to intervene claims arising from Defendant Fredericks' deployment of pepper spray on October 24, 2008. "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 318-19 (1986) (internal quotation marks and citations omitted); *accord Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015). The core inquiry in any excessive force case involving prisoners is whether force was applied in a good faith effort to maintain or restore order, or maliciously and sadistically to cause harm to the inmate. *Whitley*, 475 U.S. at 320-21. Factors relevant to the inquiry include whether correctional officers perceived a threat to their safety or to that of other inmates, whether there was a need for the application of force, whether the force used was commensurate with the need for force, efforts made to temper the severity of force used, and the extent of any injury suffered by the prisoner. *Id.* at 321; *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). To survive summary judgment, a prisoner must show that a reasonable jury could conclude that prison officials acted maliciously and sadistically to harm him rather than in a good faith effort to maintain or restore order. *See Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004) (citing *Whitley*, 475 U.S. at 322).

The use of pepper spray does not constitute a *per se* violation of the Eighth Amendment. *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984). Likewise, the use of a chemical agent that is necessary "to subdue recalcitrant prisoners does not constitute cruel and unusual punishment." *Id.* The use of chemical agents violates the Eighth Amendment only if they are used "in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Id.*

## A. Plaintiff's Motion

Sanders failed to satisfy his burden with respect to his claim of excessive force and failure to intervene involving Defendant Fredericks' use of pepper spray. Sanders provided two versions of events leading up to Fredericks' deployment of pepper spray. In one version, Plaintiff denies that he engaged in any misconduct and argues that Fredericks' conduct was completely unprovoked. *See* Pl. Facts 1. In the second version, Plaintiff simply ignores the findings of the disciplinary committee, *see* Pl. Facts 2, which is just another way of saying that Fredericks' conduct was unprovoked. The court, however, cannot ignore the disciplinary committee's findings. *See Gilbert v. Cook*, 512 F.3d 899 (7th Cir. 2008) (explaining that where prisoner's excessive force claim arises from events for which prisoner was disciplined, prisoner must concede conduct consistent with findings of prison disciplinary board to avoid running afoul of *Heck v. Humphrey*, 512 U.S. 477 (1994)).

Given Sanders' conduct both before and immediately after pepper spray was deployed, the court cannot find as a matter of law that Fredericks' use of pepper spray violated the Eighth Amendment. It then follows that the court cannot find as a matter of law that the other correctional officers' failure to intervene in Federicks' use of pepper spray violated the Eighth Amendment. *Harper v. Albert,* 400 F.3d 1052, 1064 (7th Cir. 2005) ("In order for there to be a failure to

intervene . . . there must exist an underlying constitutional violation[.]"). Plaintiff therefore is not entitled to summary judgment on these claims.

## B.    Defendants' Motion

Defendants argue as an initial matter that Sanders' claim concerning the use of pepper spray is barred by the doctrine set forth in *Heck v. Humphrey*. A prisoner may not maintain a civil rights case that challenges "a finding in his [ ] prison-discipline case that was essential to the decision in that case." *Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2012) (citing *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003)). Sanders asserted two versions of events leading up to Defendant Fredericks' use of pepper spray, both of which (either explicitly or implicitly) challenge the disciplinary committee's finding that Sanders grabbed a correctional officer's wrist and yanked the officer's arm into the cell before pepper spray was deployed. It therefore appears that Sanders' claim is *Heck*-barred. Sanders, however, wishes to avoid this result and asks the court to "ignore any allegations the court considers inconsistent with the findings of the disciplinary board." R.176, Pl. Reply to Defs. Mot. for Summ. J. at p. 3.

Even applying a theory of the case that does not run afoul of *Heck*, Sanders cannot survive summary judgment because he failed to show that Defendant Fredericks used pepper spray to maliciously cause harm rather than in a good faith effort to restore order. In particular, the findings of the disciplinary committee indicate that Fredericks responded to a threat to officer safety when he deployed two bursts of pepper spray through the chuckhole of Sanders' door, *i.e.,* Sanders had grabbed Officer Jason Rogers' arm and was yanking it into his cell through the chuckhole. Given the circumstances encountered by Fredericks, he reasonably could have concluded that Sanders' conduct would result in injury to Officer Rogers. The use of chemical agents is justified under such

circumstances. *See Soto*, 744 F.2d at 1270 (explaining that use of chemical agents "can be justified in situations which are reasonably likely to result in injury to persons"). Sanders identified no other reason for Fredericks' use of pepper spray that is consistent with the findings of the disciplinary committee.

Sanders also failed to demonstrate that the amount of pepper spray used was unnecessary or excessive. The findings of the disciplinary committee establish that "*after being sprayed with O.C.* [Sanders] stuck the end of the restraints in the door and bent and damaged the restraints." Adjustment Comm. Report (emphasis added). It then took two additional correctional officers along with a second set of handcuffs to restrain Sanders. The undisputed facts therefore show that Sanders was not incapacitated, or even slowed down much, by the pepper spray and thus Fredericks' use of pepper spray appears to have been *de minimus* given the totality of circumstances presented by this case. An excessive force claim, however, "cannot be predicated on a *de minimis* use of force . . . the quantum of force required for a constitutional violation is that which is repugnant to the conscience of mankind." *See Fillmore*, 358 F.3d at 504 (internal quotation marks omitted). Sanders made no such showing.

Sanders alleges that he suffered an asthma attack as a result of Fredericks' use of pepper spray—and the court must consider the extent of any injury suffered by Sanders in its analysis—but he presented no evidence showing that he actually suffered an asthma attack on October 24, 2008. The medical records produced by Sanders show only that he had a history of asthma and had occasional wheezing in his lungs at 1:45 p.m. *See* R.161, Pl. Exs. at p. 12 ("lungs.occ.wheezing," "resp 16," "heart wnl"). By 2:05 p.m., he reported no pain or discomfort. *See* Defs. 56.1 Stmt. ¶ 34. The medical records thus demonstrate that any injury suffered by

Sanders as a result of being exposed to pepper spray was fleeting and had no lingering effects. Any injury suffered by Sanders therefore is insufficient to tip the court's analysis in Sanders' favor.

Sanders produced no evidence from which a reasonable jury could conclude that Defendant correctional officers acted maliciously and sadistically to harm him, rather than in a good faith effort to maintain or restore order, when Defendant Fredericks deployed pepper spray on October 24, 2008. Accordingly, Fredericks is entitled to summary judgment on Sanders' claim concerning the use of pepper spray, as are the other Defendants. *See Harper,* 400 F.3d at 1064 (explaining that there can be no failure to intervene if there is no excessive force).

## II.    Excessive Force – Unnecessarily Prolonged Exposure to Pepper Spray

### A.    Plaintiff's Motion

Sanders contends that he is entitled to summary judgment on his claim that Defendant correctional officers inflicted cruel and unusual punishment on him when they placed him in the bullpen for 30 minutes without allowing him to wash the pepper spray from his eyes and face. In support of his contention, Sanders points to a portion of the Illinois Administrative Code governing the use of chemical agents during cell extractions:

> a)    This Section applies only to the transfer of a committed person who has refused to leave his cell when so ordered . . . .
>
> \*      \*      \*
>
> d)    Precautionary measures shall be taken to limit the noxious side effects of the chemical agents. In addition, the following procedures shall be followed whenever tear gas or other chemical agents are used to compel a committed person to leave his cell:
>
> > 4)    The committed person shall be instructed by the correctional officer to flush his eyes and skin exposed to the chemical agent with water. If the individual appears incapable of doing so, a member of the medical staff present shall perform this task. If no member of the

13

medical staff is present, the correctional officer shall undertake this procedure.

20 Ill. Admin. Code § 501.70 (Use of Chemical Agents in Cells (Consent Decree)); *see* R.161, Pl. Exs. at pp. 13-14.

It is undisputed that Defendant correctional officers did not take Sanders to an area where he could flush the pepper spray from his eyes and face, but this fact alone does not entitle Sanders to summary judgment. Section 501.70 applies only to cell extractions, and the circumstances confronted by the correctional officers on October 24, 2008, did not involve a cell extraction. The administrative rule identified by Sanders therefore is of little probative value concerning what procedures correctional officers *must* employ after deploying pepper spray to subdue a recalcitrant or combative inmate.

To the extent that section 501.70 has any evidentiary value in this case, the court notes that it does not set forth a timeframe within which an inmate must be allowed to flush his eyes and skin following exposure to pepper spray, but it does contemplate that medical staff will be present. That is what happened here, eventually. Medical staff were contacted and responded within 30 minutes of Sanders' initial encounter with Defendant Fredericks. *See* Defs. 56.1 Stmt. ¶¶ 21-23 (Fredericks was making rounds at 1:00 p.m., saw Officer Rogers securing Sanders in his cell, and immediately responded to a disturbance at Sanders' cell); *id.* ¶ 32 (a medical technician attended to Sanders in the bullpen at 1:30 p.m.). Accounting for the time it took for correctional officers to restrain Sanders and move him to the bullpen, Sanders was exposed to pepper spray for fewer than 30 minutes before a medical technician took over his care. Cases where prolonged exposure to pepper spray have given rise to a constitutional violation generally involve longer periods of time than elapsed here. *See, e.g., Williams v. Benjamin*, 77 F.3d 756 (4th Cir. 1996) (concluding that

14

exposure to pepper spray for eight hours while confined in four point restraints may violate constitution); *Mann v. Failey*, 578 F.App'x 267, 273-74 (4th Cir. 2014) (concluding that exposure to pepper spray for four days without shower may violate constitution); *McNeeley v. Wilson*, No. 2:12-cv-488-FtM-38MRM, 2015 WL 5159097 at *7 (M.D. Fla. Sept. 2, 2015) (concluding that exposure to pepper spray for four hours while confined in four point restraints may violate constitution).

Neither the amount of time that Sanders was exposed to pepper spray nor the correctional officers' failure to follow 20 Ill. Admin. Code § 501.70 shows that Defendants' conduct violated the Eighth Amendment as a matter of law. Sanders therefore is not entitled to summary judgment on this claim.

### B. Defendants' Motion

Defendants' motion concerning the 30 minutes or so that Sanders sat in the bullpen with pepper spray in his eyes and on his face is a closer call. Defendants argue that they are entitled to summary judgment because the undisputed facts show that Sanders promptly received medical care, Defendants had no medical training and were not responsible for providing medical care to Sanders, and "the evidence demonstrates that the Defendants made every effort to provide [Sanders] with medical attention as soon as possible." R.169, Defs. Mot. for Summ. J. at 17-19.

Defendants focus much of their argument on the admittedly short period of time—less than 30 minutes—that Sanders was exposed to the effects of pepper spray before medical personnel saw him in the bullpen. While it is true that some federal courts have found no constitutional violation where a prisoner was allowed to decontaminate within 30 minutes following exposure to pepper spray, *see, e.g., Jones v. Shields*, 207 F.3d 491 (8th Cir. 2000) (concluding that waiting 10

to 20 minutes before allowing inmate to wash off chemical agent does not give rise to constitutional violation); *Perkinson v. White*, No. 5:13-CT-3004-FL, 2015 WL 333012, at *4 (E.D.N.C. Jan. 26, 2015) (finding no constitutional violation where use of pepper spray was justified and inmate was allowed to decontaminate approximately 30 minutes later); *Laurensau v. Coi*, No. 12-623, 2014 WL 6774125, *5-6 (W.D. Pa. Dec. 1, 2014) (finding no constitutional violation where use of pepper spray was justified and nurse washed out prisoner's eyes within 30 minutes), those decisions are not binding on this court nor are they so analogous to the record before the court that the court finds them persuasive. The court also finds unpersuasive case law addressing claims concerning the denial of medical care following exposure to pepper spray.[2] Thus, the fact that Sanders was exposed to the effects of pepper spray for less than 30 minute is not dispositive on this issue.

Instead, the court finds the facts of this case most similar to those of *LaLonde v. County of Riverside*, 204 F.3d 947 (9th Cir. 2000). In *LaLonde*, police officers deployed pepper spray into LaLonde's face as he was resisting arrest. *Id.* at 952. LaLonde stopped resisting, the officers placed him in restraints, and then sat LaLonde on a couch while the officers searched his apartment. *Id.* LaLonde remained on the couch with his hands in handcuffs and the pepper spray burning his face for twenty to thirty minutes before two other officers arrived and immediately wiped LaLonde's face with a damp cloth. *Id.* In finding that LaLonde stated an excessive force claim concerning the allegedly unnecessarily prolonged exposure to pepper spray, the Ninth Circuit explained:

---

[2]Sanders framed his claim as a hybrid excessive force and deliberate indifference claim, *see* R.128, 1st Am. Comp. ¶ 24, but this is not a case about medical care. If it were, it would fail because exposure to pepper spray is not a serious medical need, *see Boyce v. McKnight*, No. 14 C 0418, 2015 WL 8778330, at *10-11 (N.D. Ill. Dec. 15, 2015) (collecting cases), and Sanders does not dispute that he never told the Defendant correctional officers that he was asthmatic, Defs. 56.1 Stmt. ¶ 31.

> [N]o particularized case law is necessary for a deputy to know that excessive force has been used when a deputy sics a canine on a handcuffed arrestee who has fully surrendered and is completely under control . . . . The same principle is applicable to the use of pepper spray as a weapon: the use of such weapons (*e.g.*, pepper spray; police dogs) may be reasonable as a general policy to bring an arrestee under control, but in a situation in which an arrestee surrenders and is rendered helpless, any reasonable officer would know that a continued use of the weapon or refusal without cause to alleviate its harmful effects constitutes excessive force.

*Id.* at 961 (internal citations and quotation marks omitted). While *LaLonde* arose in a Fourth Amendment context, its reasoning applies equally in an Eighth Amendment context.

Applying the reasoning of *LaLonde*, the court finds that questions of fact exist concerning the Defendant correctional officers' intent when they placed Sanders in the bullpen while handcuffed and without allowing him to remove the pepper spray from his face and eyes. Contrary to Defendants' assertion that "the evidence demonstrates that the Defendants made every effort to provide [Sanders] with medical attention as soon as possible," Defendants produced documents showing only that someone—not necessarily one of the Defendants or at the Defendants' direction—contacted medical personnel to attend to Sanders. *See* Defs. 56.1 Stmt. ¶ 32 ("Medical staff was contacted . . . ."). Defendants presented no evidence showing whether the correctional officers continued to perceive a threat to their safety after they placed Sanders in the bullpen and thus may have been justified in relying exclusively on medical personnel to assist Sanders. They also presented no evidence showing how long Sanders remained in the bullpen before medical personnel were contacted, who contacted medical personnel, and whether any delay in flushing Sanders eyes and face was the result of the officers' conduct or can be attributed to the response time of medical staff.

Fredericks attested that it is standard procedure to contact a medical technician to evaluate an inmate after he has been exposed to pepper spray, but that statement does not explain when or

whether an inmate may be allowed to flush his eyes and face with water before medical personnel arrive. And evidence in this case shows that, in some circumstances, application of water to the inmate's eyes and face is mandatory whether or not medical personnel are present. *See* 20 Ill. Admin. Code § 501.70 (Use of Chemical Agents in Cells (Consent Decree)). Reliance on the arrival of medical personnel to flush Sanders' eyes and face therefore could be interpreted as an intentional failure by the officers to temper their use of pepper spray since the officers' lack of medical training, by itself, does not explain why they did not take some action to alleviate the effects of the pepper spray before medical personnel arrived.

Given the record before the court, a jury could reasonably find that the delay between when Sanders was placed in the bullpen and when he was allowed to remove the pepper spray from his eyes and face was intended to cause Sanders unnecessary suffering. Accordingly, Defendants' motion on this issue is denied. The denial of summary judgment applies only to Defendants Fredericks and Hopkins insofar as Sanders' claim concerning his exposure to pepper spray was not brought against Defendant Harris, and Sanders failed to show that Defendant James B. Rogers was involved in the events of October 24, 2008 (*see* sec. IV, *infra*).

III.    **Conditions of Confinement – Failure to Provide Cleaning Supplies**

Sanders seeks summary judgment on two claims concerning the conditions of his cell following the events of October 24, 2008. First, Sanders contends that on October 25, 2008, an unidentified correctional officer escorted him from the healthcare unit back to his cell and, when Sanders did not want to enter the cell because he believed it was still contaminated by pepper spray, the officer allegedly forced Sanders into the cell under threat of punitive segregation. Sanders, however, never identified the unknown officer, so he is not entitled to summary judgment

against him. Moreover, it has been more than seven years since the occurrence and, despite an opportunity to conduct discovery into the officer's identity, Sanders neither identified nor served the officer who allegedly forced him into his cell on October 25, 2008. Sanders' claim concerning the incident therefore is dismissed with prejudice. *See Williams v. Rodriguez*, 509 F.3d 392, 402 (7th Cir. 2007) (explaining that failure to identify unknown defendant during discovery and consequential failure to serve that defendant with process requires dismissal).

Second, Sanders contends that Defendant Grievance Counselor Harris was aware of Sanders' allegedly dangerous cell conditions and his requests for cleaning supplies but willfully failed to provide cleaning supplies. Defendants moved for summary judgment on this issue as well, and the parties' motions can be resolved together because Harris is entitled to summary judgment for the same reason that Sanders is not entitled to summary judgment. That is, undisputed evidence shows that any pepper spray residue had been removed from Sanders' cell before Harris became aware of Sanders' requests for cleaning supplies.

Sanders submitted two grievances requesting cleaning supplies, which Harris received more than three weeks following Sanders' October 24, 2008 encounter with correctional officers. *See* Defs. 56.1 Stmt. ¶ 63 (Nov. 13, 2008 grievance requesting that "mace" be cleaned from ceiling of Sanders' cell received by Harris on Nov. 15, 2008); *id.* ¶¶ 64-65 (Nov. 16, 2008 grievance requesting cleaning supplies to remove "mace" from ceiling of Sanders' cell received by Harris on Nov. 22, 2008). Sanders testified at a hearing in this case, however, that the pepper spray remained on the ceiling of his cell for only about a week after the events of October 24, 2008. *Id.* ¶ 69. He also testified at his deposition that he received cleaning supplies about one week after the events of October 24, 2008. *Id.* ¶ 68.

In response to Defendants' motion for summary judgment, Sanders attempts to amend his sworn testimony to reflect that the pepper spray remained on his ceiling for about one month. Specifically, Sanders averred in an affidavit that "[p]laintiff stated he was given cleaning material about 1 week after the November 16, 2008 incident with prison guard Lindsey . . . ." *See* R.175, Pl. Reply to Defs. 56.1 Stmt. at p. 3, Sanders Aff'd ¶ 7. But Sanders' previous testimony is unambiguous:

Q.      How long did it take – how long was the mace on the inside of your cell?

A.      It was for I think about a week.

R.170-8, Dec. 20, 2012 *Pavey* Hr'g Tr. at 9:10-12; *see also* R.170-1, May 10, 2013 Dep. of C. Sanders at 25:17-27:4. The statement in Sanders' affidavit therefore is insufficient to create a disputed issue of fact concerning how long the pepper spray remained in his cell. *See Janky v. Lake County Convention & Visitors Bureau*, 576 F.3d 356, 362 (7th Cir. 2009) ("[L]itigants cannot create sham issues of fact with affidavits that contradict" sworn testimony) (internal quotation marks omitted).

Evidence properly before the court shows that any pepper spray had been removed from Sanders' cell at least one week before he first grieved the issue to Harris. It is unclear why Sanders submitted the November 13th and 16th grievances, but by his own sworn testimony, the pepper spray had been removed before he sent the November grievances. Realizing the flaw in his claim, Sanders points to a grievance dated October 27, 2013, that he says put Harris on notice of his need for cleaning supplies. *See* Pl. Facts 2 ¶ 21; R.176, Pl. Reply to Defs. Mot. for Summ. J. at 11. The October 27, 2013 grievance, however, does not request cleaning supplies but rather complains about the correctional officers' conduct during the events of October 24, 2008, and requests that

the Officer J. Rogers be fired. *See* R.170-14 at p. 45. The October 27, 2013 grievance therefore did not put Harris on notice that pepper spray needed to be removed from Sanders' cell.

Because Sanders failed to show that Harris was involved in or aware of any denial of cleaning supplies during the one week or so that the pepper spray remained in Sanders' cell, Harris cannot be held liable for any alleged constitutional violation arising from a failure to provide cleaning supplies to remove the pepper spray. *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012) ("An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation."). Sanders also failed to show that any of the other Defendants were involved in the alleged denial of cleaning supplies. Accordingly, and without reaching the issue of whether it violates the Eighth Amendment for an inmate to be forced to reside in a cell containing pepper spray residue for one week, Sanders' motion for summary judgment on this issue is denied; Defendants' motion is granted.

## IV. Defendant James B. Rogers

Relying on the disciplinary committee's report that lists "Rogers I, James B" as the "incident officer," Sanders maintains that Defendant James B. Rogers was the correctional officer involved in the events giving rise to this lawsuit. *See* R.176, Pl. Reply to Defs. Mot. for Summ. J. at 2 ("Its very clear from defendants document #170-11 filed 7.1.15 page 2 of 3 page ID#705 that defendants James Rogers was present in F-House and involved with the Plaintiff in the claims set forth in Plaintiffs complaint."). The report, however, is not as clear as Sanders contends.

The disciplinary committee's report refers to the officer whom Sanders assaulted as the reporting officer and not the incident officer. *See* Adjustment Comm. Report, Basis for Decision. Sanders therefore cannot rely on the report to establish that James Rogers was involved in the

events of October 24, 2008, without testimony or an affidavit from the custodian of records or other qualified witness to establish a foundation for the document and the information contained within it. *See* Fed. R. Evid. 802, 803(6). Foundational testimony would allow the parties to establish why James Rogers was identified as the incident officer—*e.g.,* what does the designation "incident officer" mean, is the incident officer different from the reporting officer, was there a scrivener's error? Absent a proper foundation, and in light of evidence properly before the court showing that Jason Rogers was the officer involved in the events precipitating this litigation, *see* Defs. 56.1 Stmt. ¶¶ 6-13, 21, 26, the court cannot conclude that James B. Rogers participated in the events of October 24, 2008. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Accordingly, James B. Rogers is entitled to summary judgment on each of Sanders' claims on the separate and independent ground that Sanders produced no admissible evidence showing that James Rogers was involved in the complained-of conduct.

## V.     Overly Tight Handcuffs

To the extent that Sanders' amended complaint and briefing can be read to assert a claim that his handcuffs were applied too tight, *see* R.128, 1st Am. Comp. ¶ 18; R.176, Pl. Reply to Defs. Mot. for Summ. J. at p. 6, Sanders produced no evidence to support his claim. Defendants therefore are entitled to summary judgment on any claim concerning Sanders' handcuffs.

**CONCLUSION**

For the foregoing reasons, Sanders' motion for summary judgment is denied. Defendants' motion for summary judgment is granted in part and denied in part:

1. Summary judgment is granted in favor of Defendants on Sanders' claim concerning the use of pepper spray at his cell;

2. Summary judgment is denied as to Defendants Fredericks and Hopkins on Sanders' claim concerning the allegedly unnecessarily prolonged exposure to pepper spray but granted as to all other Defendants;

3. All claims against the John Doe Defendant are dismissed with prejudice;

4. Summary judgment is granted in favor of Defendants on Sanders' claim concerning his failure to receive cleaning supplies for his cell following the events of October 24, 2008;

5. Summary judgment is granted in favor of Defendant James B. Rogers on all claims against him; and

6. Summary judgment is granted in favor of Defendants on Sanders' claim concerning his handcuffing.

This case will proceed only on Sanders' claim against Defendants Fredericks and Hopkins concerning Sanders' allegedly unnecessarily prolonged exposure to pepper spray after being placed in the bullpen.


Date: 1/8/16               _____/s/_____
                                    Joan B. Gottschall
                            United States District Judge